# EXHIBIT 2

FILED
20-0751
9/30/2020 4:00 PM
tex-46724246
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

KYLE D. HAWKINS                                                    (512) 936-1700
Solicitor General                                          Kyle.Hawkins@oag.texas.gov

September 30, 2020

**Via Electronic Filing**

Blake Hawthorne, Clerk
Supreme Court of Texas

Re:    No. 20-0751, *In re Hotze, et al.*

Dear Mr. Hawthorne:

On September 28, 2020, the Court invited the Solicitor General to file a brief expressing the views of the State on three questions presented in this mandamus petition.[1]

The view of the State is that the mandamus petition should be denied or dismissed for lack of jurisdiction. Each of Relators' claims fails on the merits. *See infra* I. But the Court should not reach the merits because Relators lack standing and, independently, are not entitled to mandamus relief. *See infra* II. Viewing those matters through the mandamus standard, Relators have not shown an entitlement to the relief they seek.

### I.    Respondent's alleged actions are lawful.

In the State's view, each of the three questions the Court presented to the State should be answered in the negative.

**A.** The Court first asks whether, "in light of the Governor's July 27, 2020 proclamation, . . . allowing early voting to begin on October 13, 2020, violates Texas Election Code section 85.001(a)." The Governor's Proclamation "suspend[ed] Section 85.001(a) of the Texas Election Code to the extent necessary to require that . . . early voting by personal appearance shall begin on Tuesday, October 13, 2020." The Governor has authority to suspend this statute, and his Proclamation to that

---

[1] No fee has been paid or will be paid for the preparation of this brief.

Post Office Box 12548, Austin, Texas 78711-2548 • (512) 463-2100 • www.texasattorneygeneral.gov

Page 2

effect has "the force and effect of law" under the Texas Disaster Act of 1975. Tex. Gov't Code § 418.012.

The Legislature expressly granted the Governor the authority to suspend "*any regulatory statute* prescribing the *procedures* for conduct of state business" when necessary to respond to a declared disaster. Tex. Gov't Code § 418.016(a) (emphases added); *see also* Att'y Gen. Op. KP-191 (2018) (concluding that Section 418.016(a) authorized a suspension of the Texas Election Code that yielded deadlines different than those provided by statute). Section 85.001(a) is a statute regulating the procedures for conducting an election, insofar as it specifies a beginning point for early voting. The Governor's Proclamation extends the time for early voting by suspending that beginning point effective October 13, 2020.

Relators are wrong to argue that the suspension power in section 418.016(a) is unconstitutional on its face and as employed in the Proclamation. *See* Pet. 20–24. As explained in Relators' parallel mandamus action against the Secretary of State, section 418.016(a)—and the Disaster Act as a whole—represents a proper delegation because the Governor's power is cabined by reasonable standards from the Legislature. *See* Attachment A at 14–16 (Resp. to Pet. for Writ of Mandamus, *In re Hotze*, No. 20-0739 (filed Sept. 28, 2020)).

Specifically, legislative powers can be delegated where "because of the nature of the subject of legislation [the Legislature] cannot practically and efficiently exercise such powers." *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 87 (Tex. 1940). "[A]s long as the Legislature establishes reasonable standards to guide the agency in exercising those powers," it may delegate legislative powers to another branch. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Moreover, the Legislature can delegate "the power to grant exceptions . . . of a fact-finding and administrative nature." *Williams v. State*, 176 S.W.2d 177, 185 (Tex. Crim. App. 1943) (holding that the Pink Bollworm Act did not violate Texas Constitution article I, section 28 by empowering the Governor and the Agriculture Commissioner to designate zones where growing cotton would not violate state law).

Under these principles, section 418.016(a) is a proper delegation during a state of disaster that requires quick and decisive action. In empowering the Governor to suspend regulatory statutes that would impede disaster-recovery efforts, the Legislature has not given him unlimited authority to suspend laws. Instead, the Legislature has restricted the suspension power to statutes whose "strict interpretation" would, according to the Governor's factual determination about the

Page 3

effects of a rapidly unfolding disaster, "prevent, hinder, or delay necessary action in coping with a disaster." Tex. Gov't Code § 418.016(a). Further, the suspension power is temporally restricted by the 30-day expiration date for declared states of disaster, absent renewal, together with the Legislature's ability to "terminate a state of disaster at any time." *Id.* § 418.014(c). And the Disaster Act explicitly sets forth the purposes it serves. *Id.* §§ 418.002, 418.003, 418.004(1). These provisions help ensure that gubernatorial suspension power is not used in a manner inconsistent with legislative design. Operating within the confines of this delegated authority, the Proclamation properly suspends the statutory limit on the days for early voting in order to protect voters and poll workers during the COVID-19 disaster.

This conclusion is bolstered by the Legislature's awareness of past exercises of section 418.016(a). Indeed, use of this suspension power is nothing new, as Governors have exercised this delegated authority many times in responding to disasters. For example, during the 2017 Hurricane Harvey disaster, the Governor suspended numerous provisions of Texas law in order to alleviate hindrances to response efforts.[2] The suspension power has also been used to suspend provisions of the Texas Election Code in order to promptly call a special election.[3] Yet the Legislature did not repeal or amend the challenged provisions to further limit the Governor's authority to respond to the next crisis. A ruling in Relators' favor would contravene this clear authority from the Legislature and, importantly, undermine the State's ability to respond effectively to any existing or future disaster.

Relators here challenge the Legislature's grant of suspension authority to the Governor, but the Legislature has similarly delegated suspension power to this Court. *See* Tex. Gov't Code § 22.0035(b). The Court has repeatedly exercised that

---

[2]    *See, e.g.*, Proclamation (Oct. 16, 2017), *https://gov.texas.gov/news/post/governor-abbott-extends-suspension-of-rules-relating-to-vehicle-registratio*; Proclamation (Sept. 7, 2017), *https://gov.texas.gov/news/post/governor-abbott-extends-suspension-of-hotel-occupancy-tax-after-hurricane-h*; Proclamation (Aug. 29, 2017), *https://gov.texas.gov/news/post/governor-abbott-issues-a-proclamation-for-port-aransas-independent-school-d*; Proclamation (Aug. 25, 2017), *https://gov.texas.gov/news/post/governor-abbott-suspends-hotel-occupancy-tax*; Proclamation (Aug. 23, 2017), *https://gov.texas.gov/news/post/Disaster-Proclamation-Issued-For-30-Texas-Counties-in-Anticipation-Of-Tropical-Depression-Harvey-Making-Landfall*.

[3]    *See* Proclamation (Apr. 24, 2018), *https://gov.texas.gov/news/post/governor-greg-abbott-orders-emergency-special-election-for-the-27th-congressional-district-of-texas*.

Page 4

authority in addressing the pandemic's severe impact on court operations.[4] There is nothing novel—or unconstitutional—about this or section 418.016(a)'s grant of suspension power.

In any event, regardless of whether Relators' suspension arguments have merit, the Court should deny relief because the Proclamation can be upheld based on any power properly delegated to the Governor. The Proclamation generally invokes the Disaster Act, which expressly grants the Governor the authority to "control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area." Tex. Gov't Code § 418.018(c). Even if the suspension power did not exist, the Proclamation could be upheld based on the independent power to limit the occupancy of early voting sites while allowing all voters the chance to cast their votes. Mandamus and other relief should be denied simply because there are valid, alternative grounds to support the Proclamation.

**B.** The Court next asks whether, "in light of the Governor's July 27, 2020, proclamation, . . . allowing a voter to deliver a marked mail ballot in person to the early voting clerk's office beginning on September 28, 2020, violates Texas Election Code section 86.00[6](a-1)."

The answer to that question is no, mostly for the reasons discussed above. Exercising the Governor's constitutionally delegated authority in section 418.016(a), as well as the authority to control the occupancy of premises under section 418.018(c), the Proclamation "suspend[ed] Section 86.006(a-1) of the Texas Election Code . . . to the extent necessary to allow a voter to deliver a marked mail ballot in person to the early voting clerk's office prior to and including on election day." The Proclamation thus allows voters to personally return their completed mail ballots at any time up to and including election day. The Governor did so by

---

[4]    *See, e.g.*, Misc. Dkt. Nos. 20-9042, 20-9044, 20-9059, 20-9071, 20-9080, 20-9095, 20-9112 (proclaiming that "all courts in Texas may . . . [m]odify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order"); Misc. Dkt. No. 20-9068 (proclaiming that "[a]ny Texas statute requiring or permitting citation by publication on the website or requiring the Office of Court Administration to generate a return of citation is suspended until July 1, 2020," thereby suspending the explicit deadline in S.B.891, § 9.04, 86th Leg., R.S. (2019)); Misc. Dkt. No. 20-9045 (proclaiming that "[i]n any action for eviction to recover possession of residential property under Chapter 24 of the Texas Property Code . . . [n]o trial, hearing, or other proceeding may be conducted, and all deadlines are tolled").

Page 5

suspending the requirement that a voter can return the marked mail ballot only on election day.

Importantly, the Proclamation does not change section 86.006's protections for ballot integrity. Only the voter may return his marked ballot in person—no third-party may do so. Tex. Elec. Code § 86.006(a)(3). And when delivering his ballot, the voter "must present an acceptable form of identification described by [Texas Election Code] section 63.0101." *Id.* § 86.006(a-1).

**C.** Finally, the Court asks whether, "in light of the Governor's July 27, 2020 proclamation, . . . allowing a voter to deliver a marked mail ballot in person to any of [the] eleven annexes in Harris County violates Texas Election Code section 86.00[6](a-1)." The Government Code generally provides that the singular includes the plural. *See* Tex. Gov't Code § 311.012(b). Nothing in section 86.006(a-1) overcomes that presumption or otherwise indicates that "office," as used in section 86.006(a-1), does not include its plural, "offices." Accordingly, the Secretary of State has advised local officials that the Legislature has permitted ballots to be returned to any early-voting clerk office. *See* Attachment B (email dated Aug. 26, 2020).[5]

## II. The Court should not reach these questions, however, because Relators lack standing and because mandamus relief is not available.

The Court should not reach any of these issues, however, because Relators do not have standing and because Relators, having slumbered on their rights, are not entitled to mandamus relief.

**A.** Relators lack standing, so the Court does not have jurisdiction. As explained in response to Relators' parallel petition, Relators do not have constitutional standing because they lack a concrete, justiciable interest in the issues raised. *See* Attachment A at 11–13. Because Relators "seek to correct an alleged violation of the separation of powers, [the Court's] standing inquiry must be especially rigorous."

---

[5]     To the extent county early-voting clerks maintain several early-voting offices capable of receiving completed ballots, the State has a compelling interest in ensuring the integrity of the protocols in place at such offices. This brief does not opine on the circumstances under which a "watcher" may be "appointed" under Chapter 33 of the Election Code in the context of annexes. Nevertheless, the State notes that counsel for Harris County recently agreed in oral argument before this Court that "poll watchers have been there [at annexes] for a couple of days," and "I don't understand why they couldn't be in a public office building." Oral Argument at 44:05–44:48, *State v. Hollins*, No. 20-0729 (Sept. 30, 2020).

Page 6

*In re Abbott*, 601 S.W.3d 802, 809 (Tex. 2020) (per curiam) (internal quotation marks omitted). Their general interest in compliance with the law is the type of generalized grievance that is not cognizable in Texas courts. This petition, like No. 20-0739, should be dismissed for want of jurisdiction.

**B.** Alternatively, the Court should deny the petition because Relators have waited too long to seek relief. Mandamus is "controlled largely by equitable principles," one of which is that "equity aids the diligent and not those who slumber on their rights." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (per curiam) (quoting, *inter alia*, *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993)). The Governor extended early voting for the July 14 elections on May 11, 2020. The Governor first announced plans to extend early voting for the general election later in May. The Governor then issued this Proclamation on July 27, 2020—over two months ago. Yet Relators waited until September 28 to ask this Court to "alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). They offer no excuse or explanation for this lengthy delay. And they offer no reason, much less a compelling one, for failing to first seek relief in the court of appeals. *See* Tex. R. App. P. 52.3(e).

To the extent the issues raised here have any merit—which they do not—those questions, and the consequences they have for the State of Texas, deserve careful study and consideration by the parties, the State, and the Court. Such weighty issues deserve more than a hurried disposition necessitated by Relators' dilatory litigation conduct. Because Relators cannot justify their lengthy delay, mandamus relief should be denied. *See Chambers-Liberty Counties Navigation Dist. v. State*, 575 S.W.3d 339, 356 (Tex. 2019); *Rivercenter*, 858 S.W.3d at 367–68.

The Court should dismiss the petition for lack of jurisdiction or deny relief.

Page 7

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Kyle D. Hawkins
KYLE D. HAWKINS
Solicitor General
State Bar No. 24094710
Kyle.Hawkins@oag.texas.gov

LANORA C. PETTIT
NATALIE D. THOMPSON
Assistant Solicitors General

BEAU CARTER
Assistant Attorney General

Counsel for the State of Texas

## CERTIFICATE OF SERVICE

On September 30, 2020, this document was served electronically on Jared R. Woodfill, lead counsel for Relators, at woodfillservice@gmail.com; and on Susan Hays, lead counsel for Real Party in Interest Chris Hollins, via hayslaw@me.com.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this document contains 2,147 words, excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ Kyle D. Hawkins
KYLE D. HAWKINS

ATTACHMENT A:
RESP. TO PET. FOR WRIT OF MANDAMUS, *IN RE HOTZE*, NO. 20-0739 (FILED SEPT. 28, 2020)

FILED
20-0739
9/28/2020 3:56 PM
tex-46640936
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 20-0739

# In the Supreme Court of Texas

In re Steven Hotze, M.D., Hon. Allen West, Republican Party of Texas, Hon. Sid Miller, Hon. Mark Henry, Hon. Charles Perry, Hon. Pat Fallon, Hon. Bill Zedler, Hon. Cecil Bell, Jr., Hon. Steve Toth, Hon. Dan Flynn, Hon. Matt Rinaldi, Hon. Rick Green, Hon. Molly White, Harris County Republican Party/Hon. Keith Nielson, Hon. Bryan Slaton, Hon. Robin Armstrong, M.D., Jim Graham, Hon. Cathie Adams, Hon. JoAnn Fleming, Julie McCarty, Sharon Hemphill, and Al Hartman,

*Relators.*

On Petition for Writ of Mandamus to the Secretary of State

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Ryan L. Bangert
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Kyle D. Hawkins
Solicitor General
State Bar No. 24094710
Kyle.Hawkins@oag.texas.gov

Lanora C. Pettit
Natalie D. Thompson
Assistant Solicitors General

William T. Thompson
Special Counsel

Beau Carter
Assistant Attorney General

Counsel for Respondent

# Identity of Parties and Counsel

**Respondent:**
Hon. Ruth R. Hughs

**Counsel for Respondent:**
Ken Paxton
Jeffrey C. Mateer
Ryan L. Bangert
Kyle D. Hawkins (lead counsel)
Lanora C. Pettit
Natalie D. Thompson
William T. Thompson
Beau Carter
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Kyle.Hawkins@oag.texas.gov

**Relators:**
Steven F. Hotze, M.D.
Hon. Allen West, Chairman, Republican Party of Texas, Lieutenant Colonel (Ret.)
Republican Party of Texas
Hon. Sid Miller
Hon. Mark Henry
Hon. Charles Perry
Hon. Pat Fallon
Hon. Bill Zedler
Hon. Cecil Bell, Jr.
Hon. Steve Toth
Hon. Dan Flynn
Hon. Matt Rinaldi
Hon. Rick Green
Hon. Molly White
Harris County Republican Party/Hon. Keith Nielson
Hon. Bryan Slaton
Hon. Robin Armstrong, M.D.
Jim Graham, Executive Director, Texas Right to Life

Hon. Cathie Adams
Hon. JoAnn Fleming
Julie McCarty
Sharon Hemphill
Al Hartman

**Counsel for Relators:**
Jarod R. Woodfill
Woodfill Law Firm, P.C.
3 Riverway, Ste. 750
Houston, TX 77056
woodfillservice@gmail.com

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel .............................................................i

Index of Authorities .............................................................................iv

Record References ..............................................................................viii

Statement of the Case .......................................................................viii

Statement of Jurisdiction ..................................................................viii

Issues Presented ...................................................................................ix

Introduction...........................................................................................1

Statement of Facts ................................................................................2

    I.   In the Disaster Act, the Legislature Delegated Emergency Powers
to the Governor to Enable Quick and Decisive Action .............................2

    II.  During the Pandemic, the Governor Has Acted to Ensure the
Safety and Integrity of Texas Elections .....................................................3

    III. The Secretary Performed the Only Act Required of Her Months
Ago ...................................................................................................5

Summary of the Argument....................................................................5

Argument...............................................................................................6

    I.   Relators Have Not Identified Any Ministerial Duty Imposed on
the Secretary.............................................................................................6

    II.  Relators Lack Constitutional Standing.....................................................11

    III. Relators' Constitutional Challenges Are Not Properly Before the
Court—and They Would Fail if They Were ...........................................14

Prayer ..................................................................................................17

Certificate of Service...........................................................................17

Certificate of Compliance ..................................................................17

# Index of Authorities

Page(s)

**Cases:**

*In re Abbott*,
601 S.W.3d 802 (Tex. 2020) ...................................................................... 11, 13

*In re Abbott*,
954 F.3d 772 (5th Cir. 2020) ........................................................................ 3

*Barshop v. Medina County Underground Water Conservation Dist.*,
925 S.W.2d 618 (Tex. 1996) ...................................................................... 14

*Becker v. FEC*,
230 F.3d 381 (1st Cir. 2000) ...................................................................... 12

*Berg v. Obama*,
586 F.3d 234 (3d Cir. 2009) ...................................................................... 12

*Brown v. Todd*,
53 S.W.3d 297 (Tex. 2001) ...................................................................... 11, 12

*Bullock v. Calvert*,
480 S.W.2d 367 (Tex. 1972) ...................................................................... 9, 10

*Comm'rs Ct. of Cherokee County v. Cooksey*,
718 S.W.2d 26 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) ................................ 14

*Finch v. Miss. State Med. Ass'n, Inc.*,
585 F.2d 765 (5th Cir. 1978), *modified*
594 F.2d 163 (5th Cir. 1979) ...................................................................... 13

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000) ...................................................................... 15

*Gottlieb v. FEC*,
143 F.3d 618 (D.C. Cir. 1998) ...................................................................... 12

*Heckman v. Williamson County*,
369 S.W.3d 137 (Tex. 2012) ...................................................................... 11

*Hunt v. Bass*,
664 S.W.2d 323 (Tex. 1984) ...................................................................... 13, 14

*Jacobson v. Fla. Sec'y of State*,
No. 19-14552, 2020 WL 5289377 (11th Cir. Sept. 3, 2020) ............................ 12

*Lewis v. Governor of Ala.*,
944 F.3d 1287 (11th Cir. 2019) ...................................................................... 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................ 11, 14

*Mistretta v. United States*,
   488 U.S. 361 (1989) ...................................................................... 15

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ........................................................ 10

*Pidgeon v. Turner*,
   538 S.W.3d 73 (Tex. 2017) ........................................................... 10

*Raines v. Byrd*,
   521 U.S. 811 (1997) ...................................................................... 11

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
   140 S. Ct. 1205 (2020) ................................................................... 1

*In re Republican Party of Tex.*,
   605 S.W.3d 47 (Tex. 2020) ............................................................. 8

*In re Roman*,
   554 S.W.3d 73 (Tex. App.—El Paso 2018, no pet.) ........................ 13

*In re Stalder*,
   540 S.W.3d 215 (Tex. App.—Hous. [1st Dist.] 2018, orig. proceeding) .......... 10

*Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*,
   952 S.W.2d 440 (Tex. 1993) .......................................................... 11

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
   952 S.W.2d 454 (Tex. 1997) .......................................................... 15

**Constitutional Provisions and Statutes:**

Tex. Const.
   art. I, § 28 ..................................................................................... 15
   art. V, § 3(a) ................................................................................. viii

Tex. Elec. Code:
   art. 1.03 (recodified) ....................................................................... 9
   § 1.005(10) ...................................................................................... 8
   § 3.003 ............................................................................................ 9
   § 3.004 ............................................................................................ 9
   § 4.007 ............................................................................................ 9
   § 31.003 .......................................................................................... 9
   § 31.005 .......................................................................................... 9
   § 61.002 .......................................................................................... 7

Tex. Elec. Code (ctd.):

§ 85.001 ............................................................................................... 6, 7

§ 85.001(a) ......................................................................................... *passim*

§ 85.062(a) ................................................................................................ 7

§ 86.001 .................................................................................................... 6

§ 86.001(a) ................................................................................................ 6

§ 86.006(a-1) ..................................................................................... *passim*

§ 86.006(h) ............................................................................................... 7

§ 86.011(c) ............................................................................................... 7

§ 273.061 ...................................................................................... viii, 6, 8

Tex. Gov't Code:

§ 22.002 ................................................................................................ viii

§ 22.002(a) ........................................................................................... viii

ch. 418 .................................................................................................... 2

§ 418.004(1) ............................................................................................ 2

§ 418.011 ................................................................................................. 2

§ 418.012 ............................................................................................ 2, 8

§ 418.014(a) ............................................................................................ 2

§ 418.014(b)(1) ....................................................................................... 2

§ 418.014(c) ....................................................................................... 2, 15

§ 418.016 ................................................................................................. 3

§ 418.016(a) .......................................................................................... 16

§ 418.017 ................................................................................................. 3


**Other Authorities:**

44 Tex. Jur. 3d *Injunctions*, § 232 ....................................................... 13

Bryan A. Garner *et al.*, *The Law of Judicial Precedent* 655 (2016) ........................... 10

Patrick Svitek, *Texas will extend early voting period this fall, Gov. Greg
    Abbott says*, Tex. Tribune (May 28, 2020),
    https://www.texastribune.org/2020/05/28/texas-2020-early-
    voting-greg-abbott-coronavirus/ ...................................................... 4

Proclamation of July 27, 2020 ........................................................ *passim*

Proclamation of March 13, 2020 ............................................................ 3

Proclamation of March 20, 2020 ............................................................ 3

Proclamation of May 11, 2020 ................................................................ 4

Proclamation of Sept. 7, 2020 ................................................................ 3

Writ of Election for Early Voting Ballot Board Judge,
     https://www.sos.state.tx.us/elections/forms/pol-sub/4-14f.pdf ......................9
Writ of Election for the General Election,
     https://www.sos.state.tx.us/elections/forms/pol-sub/4-13f.pdf; ....................9
Writ of Election, https://www.sos.state.tx.us/elections/forms/pol-
     sub/4-12f.pdf; ....................................................................................................9

## Record References

Respondent's appendix is cited as "App.[x]." As Relators did not submit a mandamus record, "MR" refers to the record submitted herewith, which includes materials relevant to this response.

## Statement of the Case

*Nature of the Case*:     This is an original proceeding filed by Relators Steven Hotze and others seeking a writ of mandamus directing the Texas Secretary of State to take unspecified actions. Relators argue the Secretary has violated the Texas Constitution and the Election Code because on July 27, 2020, the Governor issued a proclamation that suspends two provisions of the Election Code using his emergency powers under the Disaster Act. The proclamation extends the time for early voting in the upcoming general election and allows voters to return early-vote-by-mail ballots in person any time after they receive their ballots. Relators further contend thatthe Disaster Act is unconstitutional and that the Governor has acted improperly by failing to call a special session of the Legislature.

## Statement of Jurisdiction

The Court lacks jurisdiction to issue the requested writ. Generally speaking, Texas Government Code section 22.002 and Texas Election Code section 273.061 allow the Court to issue writs of mandamus. The Court lacks statutory or constitutional jurisdiction, however, to issue a writ of mandamus to the Governor. Tex. Const. art. V, § 3(a); Tex. Gov't Code § 22.002(a). And it lacks jurisdiction to issue a writ to the Secretary because the Secretary has no power to rescind or enforce the Governor's Proclamation, so any such writ would not redress Relators' alleged injury.

## ISSUES PRESENTED

1.   Whether the Secretary of State has any ministerial duties under Election Code sections 85.001(a) or 86.006(a-1), which are implemented by local early-voting clerks.

2.   Whether Relators have constitutional standing to sue the Secretary.

3.   Whether this petition properly presents Relators' constitutional challenges to the Disaster Act, and if so, whether the Disaster Act delegates legislative power governed by reasonable standards.

## To the Honorable Supreme Court of Texas:

Relators direct their petition at the Secretary of State, even though they do not allege that she has undertaken or threatened to undertake any unlawful action. Neither the Governor's July 27 proclamation ("the Proclamation") nor the Election Code imposes any ministerial duty on the Secretary. And the provisions of the Election Code concerning early voting are administered by county election officials, not the Secretary of State. Although the Election Code designates the Secretary as Texas's "chief election officer," this Court has long held that does not give her generalized enforcement power over every provision of the Election Code. Moreover, the Proclamation independently binds each county's early-voting clerk, so any mandamus issued against the Secretary would not remedy Relators' grievances. Indeed, granting the relief Relators seek would have no impact at all—which makes this petition nothing more than a request for an advisory opinion.

Relators' merits arguments are similarly misguided. They raise multiple constitutional challenges to the Disaster Act, but none is properly before this Court because the Disaster Act delegates no power to the Secretary. And in any event, the Governor's discretion and authority under the Disaster Act are cabined by reasonable standards, so it is a lawful delegation of legislative power, and the July 27 Proclamation is a proper exercise of that delegated power.

Relators waited two months to file this mandamus petition, yet they ask this Court to "alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). They are not entitled to relief.

## STATEMENT OF FACTS

### I.   In the Disaster Act, the Legislature Delegated Emergency Powers to the Governor to Enable Quick and Decisive Action.

The Disaster Act empowers the Governor to exercise emergency powers in the event of a disaster in one or more Texas counties. Tex. Gov't Code ch. 418. The Act both defines and limits when the Governor may declare a disaster: It pronounces the Governor's responsibilities to include "meeting" "dangers to the state and people presented by disasters" and "disruptions to the state and people caused by energy emergencies." Tex. Gov't Code § 418.011. When a state of disaster is declared, the Act allows the Governor to issue executive orders and proclamations with the "force and effect of law." *Id.* § 418.012.

A state of disaster may be declared if the Governor "finds a disaster has occurred or that the occurrence or threat of disaster is imminent." Tex. Gov't Code § 418.014(a). It explicitly provides that an "epidemic" can constitute a disaster, *id.* § 418.004(1), and that the Governor decides when "the threat or danger has passed" or "the disaster has been dealt with to the extent that emergency conditions no longer exist," *id.* § 418.014(b)(1). Nevertheless, the Act requires that the Governor reexamine his decision every 30 days and announces that the Legislature may terminate it at any time. *Id.* § 418.014(c).

Under the Disaster Act, a declaration of disaster permits the Governor to suspend the provisions of any regulatory statute[s]" prescribing the procedure for conduct of state business and the orders and rules of state agencies if they would "in any way prevent, hinder, or delay necessary action in coping with [the] disaster."

2

Tex. Gov't Code § 418.016. He "may use all available resources of state government and of political subdivisions that are reasonably necessary." *Id.* § 418.017.

## II. During the Pandemic, the Governor Has Acted to Ensure the Safety and Integrity of Texas Elections.

The coronavirus pandemic reached American shores in early 2020 and Texas in March. The Governor first declared a statewide disaster on March 13, 2020. *See* App.3 (Proclamation of March 13, 2020). In the ensuing six months, the declaration of disaster has been renewed multiple times—most recently on September 7, 2020. *See* App.7 (Proclamation of Sept. 7, 2020). As the Fifth Circuit explained early in the pandemic:

> [W]hen faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some real or substantial relation to the public health crisis and are not beyond all question, a plain, palpable invasion of rights secured by the fundamental law. Courts may ask whether the state's emergency measures lack basic exceptions for extreme cases, and whether the measures are pretextual—that is, arbitrary or oppressive. At the same time, however, courts may not second-guess the wisdom or efficacy of the measures.

*In re Abbott*, 954 F.3d 772, 784–85 (5th Cir. 2020) (citations and internal quotation marks omitted).

Using the emergency powers granted by the Disaster Act, the Governor has taken numerous actions to protect Texans, including when they go to the polls. The Governor authorized postponement of elections scheduled for May until July 14. *See, e.g.*, App.4 (Proclamation of March 20, 2020). He expanded the early-voting period

3

for all July 14 elections so "election officials can implement appropriate social distancing and safe hygiene practices." App.5 (Proclamation of May 11, 2020).

Four months ago, in May, the Governor announced plans to similarly extend the early voting period for the November general election. *See* Patrick Svitek, *Texas will extend early voting period this fall, Gov. Greg Abbott says*, Tex. Tribune (May 28, 2020), https://www.texastribune.org/2020/05/28/texas-2020-early-voting-greg-abbott-coronavirus/. On July 27, he did so.

In his Proclamation, which is the subject of this petition, the Governor found that "in order to ensure that elections proceed efficiently and safely . . . it is necessary to increase the number of days in which polling locations will be open during the early voting period, such that election officials can implement appropriate social distancing and safe hygiene practices." App.6 (Proclamation of July 27, 2020).

To accomplish that aim, the Proclamation suspends two provisions of the Election Code. First, it suspends "[s]ection 85.001(a) of the Texas Election Code to the extent necessary to require that, for any election . . . on November 3, 2020, early voting by personal appearance shall begin on Tuesday, October 13, 2020, and shall continue through the fourth day before election day." *Id.* Second, it suspends "[s]ection 86.006(a-1) . . . to the extent necessary to allow a voter to deliver a marked mail ballot in person to the early voting clerk's office prior to and including on election day." *Id.*

Like the May 11 proclamation, the Proclamation ordered the Secretary to "take notice of this proclamation" and to "transmit a copy of this order immediately to every County Judge of this state." App.6; *see also* App.5. And, like the May 11

4

proclamation, the Proclamation provides in the passive voice that "all appropriate writs *will be issued* and all proper proceedings *will be followed* . . . in accordance with law." App.6 (emphases added); App. 5.

## III.  The Secretary Performed the Only Act Required of Her Months Ago.

The Secretary complied with the only provision of the Proclamation addressing her. Specifically, on the afternoon of July 27, 2020, the Secretary sent a copy of the Proclamation to local election officials. *See* MR.01–02. Relators do not allege the Secretary has taken any additional action since that day.

### Summary of the Argument

The Secretary of State does not enforce the Proclamation or Election Code sections 85.001(a) and 86.006(a-1), and those who do—local early-voting clerks— are independently bound by the Proclamation. As such, there is no ministerial duty this Court could order the Secretary to perform that would remedy Relators' supposed injury. For that reason alone, Relators' petition fails.

Moreover, Relators lack constitutional standing to sue because they have not identified any justiciable interest that could be vindicated here. A mandamus petitioner must identify and support an injury-in-fact, causation, and redressability. Relators' general interest in ensuring the law is followed does not create standing. Because Relators state no more than generalized grievances common to the public at large, the petition for writ of mandamus should be dismissed for want of jurisdiction.

Finally, Relators' sundry challenges to the Disaster Act's constitutionality are not the subject of a live controversy in this petition. The Act does not delegate any

power to the Secretary, so any order against her would not provide relief; and the Governor is not a party, so any opinion about the constitutionality of his delegated powers would be advisory. In any event, Relators' constitutional challenges would fail because the Disaster Act is an appropriate delegation of legislative authority subject to reasonable standards, and the Proclamation is a proper exercise of that authority.

**ARGUMENT**

## I.  Relators Have Not Identified Any Ministerial Duty Imposed on the Secretary.

To seek mandamus under Election Code section 273.061, Relators must identify a ministerial "duty imposed by law in connection with the holding of an election." *See* Pet. 3. Relators do not identify any ministerial duty they want "to compel the performance of." Tex. Elec. Code § 273.061.

**A.**  Relators argue that the Secretary has "statutory duties to administer early voting in person consistent with Texas Election Code §86.001" and "statutory duties under Texas Election Code § 86.006(a-1)." Pet. 1. Neither of those sections imposes any duty, much less a ministerial one, on the Secretary. Section 86.001 is not about the Secretary or in-person voting. It requires "[t]he early voting clerk" to "review each application for a ballot to be voted by mail." Tex. Elec. Code § 86.001(a). That section cannot support a writ of mandamus against the Secretary.

Nor does any other provision. For example, although Relators did not cite section 85.001, it provides that "[t]he period for early voting by personal appearance begins on the 17th day before election day and continues through the fourth day

6

before election day." *Id.* § 85.001(a). That does not impose a ministerial duty on the Secretary either. It sets a general rule telling local officials when to open and operate early voting polling places.

Local officials, not the Secretary, administer early voting. The Election Code provides that "one or more early voting polling places . . . may be established" by "the commissioners court" or "the governing body of the political subdivision." Tex. Elec. Code § 85.062(a). Local officials then open and operate early-voting polling places "[a]t the official time." *Id.* § 61.002. Thus, even if section 85.001 imposes a ministerial duty on those who open and operate early-voting polling places, it would not impose such a duty on the Secretary.

Section 86.006(a-1) also does not impose a ministerial duty on the Secretary. It provides that "[t]he voter may deliver a marked ballot in person to the early voting clerk's office only while the polls are open on election day." Tex. Elec. Code § 86.006(a-1). On its face, that provision gives an option to those who vote by mail. One might argue it imposes an implicit duty on voters not to return marked ballots to their local early-voting clerks at a different time, but that has nothing to do with the Secretary.

Section 86.006(h) makes clear that local officials, not the Secretary, enforce any limitations imposed by section 86.006(a-1). "If the early voting clerk determines that the ballot was returned in violation of this section, *the clerk* shall make a notation on the carrier envelope and treat it as a ballot not timely returned in accordance with [s]ection 86.011(c)." *Id.* § 86.006(h) (emphasis added). Then, depending on timing, "the early voting clerk" may have to "deliver to the voter a written notice." *Id.* In

any event, the local officials responsible for counting votes do not count improperly returned ballots. *See id.* That process has nothing to do with the Secretary.

**B.**  Elsewhere, Relators point to two duties that the Governor's Proclamation allegedly imposes on the Secretary. But these proclamation-based duties also do not require ministerial acts that could be compelled.

*First*, Relators say that the Secretary "has been ordered to take notice of Governor Abbott's July 27, 2020 proclamation and transmit a copy of Governor Abbott's order to every County Judge of this state." Pet. 4. That cannot support mandamus for three reasons. First, Relators do not seek to compel the exercise of that duty. Ordering the Secretary to transmit the Governor's proclamation would not advance Relators' goal of preventing the Governor's proclamation from going into effect. Second, the Secretary has already carried out this duty, so a writ of mandamus would accomplish nothing. Third, the Proclamation has "the force and effect of law," Tex. Gov't Code § 418.012, but by definition a section 273.061 mandamus action "is limited to a duty imposed by a constitution, statute, city charter, or city ordinance." *In re Republican Party of Tex.*, 605 S.W.3d 47, 48 (Tex. 2020) (citing Tex. Elec. Code § 1.005(10)).

*Second*, Relators claim the Secretary "is further ordered to 'issue all appropriate writs . . . and all proper proceedings will be followed to the end that said elections may be held and their results proclaimed in accordance with law.'" Pet. 4. Relators' reliance on this proclamation-based duty is misplaced for the same reasons explained above. In particular, this portion of the Proclamation does not impose a duty on the Secretary at all. Instead of focusing on the Secretary, the Proclamation uses the

passive voice: "all appropriate writs will be issued and all proper proceedings will be followed to the end that said elections may be held and their results proclaimed in accordance with law." App.6; *see also* App.5. But the Secretary does not issue writs of election. *See* Tex. Elec. Code §§ 3.003, 3.004, 4.007.[*]

**C.**   Finally, Relators point to the Secretary's title, "chief election officer," Pet. 4, 9, 23–24, but this Court has explained that the title "chief election officer" is not "a delegation of authority to care for any breakdown in the election process." *Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972) (Reavley, J.). Texas law, then as now, charged the Secretary with "'obtain[ing] and maintain[ing] uniformity in the application, operation and interpretation of the election laws.'" *Id.* at 371 (quoting former Tex. Elec. Code art. 1.03); *accord* Tex. Elec. Code § 31.003. "Acting as the 'chief election officer' of the state," the Secretary had "determined that uniformity [could not] be obtained . . . without the expenditure of state funds." *Bullock*, 480 S.W.2d at 369. This Court rejected the idea that the Secretary had an implied power to do whatever was necessary to achieve uniformity. *See id.* at 372. In situations like this, where no one is "imped[ing] the free exercise of a citizen's voting rights," Tex. Elec. Code § 31.005, the Secretary does not even have authority to "order" local officials to change their practices. The Secretary's title does not give her power to

---

[*]   The Secretary of State's website contains forms used for writs of election, but she does not issue the writs herself. *See* Writ of Election, https://www.sos.state.tx.us/elections/forms/pol-sub/4-12f.pdf; Writ of Election for the General Election, https://www.sos.state.tx.us/elections/forms/pol-sub/4-13f.pdf; Writ of Election for Early Voting Ballot Board Judge, https://www.sos.state.tx.us/elections/forms/pol-sub/4-14f.pdf.

coerce local officials into ignoring the Governor's proclamation, much less impose a ministerial duty to do so. *See In re Stalder*, 540 S.W.3d 215, 218 n.9 (Tex. App.— Houston [1st Dist.] 2018, orig. proceeding) (noting that a party provided "no legal authority to suggest that, having received the Secretary of State's assistance and advice in response to an inquiry, the party chair lacked the authority to then form and act upon her own ultimate legal judgment" (citation omitted)).

Relators cite *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), but that case is both irrelevant and wrongly decided. It addressed whether the Secretary was a proper defendant under federal principles of Article III standing. *See id.* at 613– 14. That has nothing to do with whether the Election Code imposes a ministerial duty on the Secretary in this case. Moreover, *OCA*'s cursory analysis did not even cite—let alone substantively discuss—this Court's precedent interpreting the Secretary's powers. *See id.* In any event, *OCA* is neither binding on this Court, *see Pidgeon v. Turner*, 538 S.W.3d 73, 83 & n.17 (Tex. 2017); Bryan A. Garner *et al.*, *The Law of Judicial Precedent* 655 (2016); nor persuasive, *see Bullock*, 480 S.W.2d at 372. A federal court's *Erie* guess about the meaning of the Texas Election Code cannot control this Court's authoritative interpretation.

But even if the Secretary had a ministerial duty to obtain uniformity in this situation, uniformity already has been achieved. To the best of the Secretary's knowledge, all local officials are properly implementing the Election Code in light of the Proclamation, and Relators never argue otherwise. This shows that uniformity is not what Relators seek. Because uniformity can be achieved by either all counties following the Governor's proclamation (as the State wants) or no counties following

the Governor's proclamation (as Relators want), a writ of mandamus compelling the Secretary to achieve uniformity would not redress Relators' supposed injuries.

## II. Relators Lack Constitutional Standing.

The Court need not decide whether Relators have identified a ministerial duty, however, because they have not alleged, let alone established, standing to pursue the writ. "[S]tanding is a constitutional prerequisite to maintaining a suit" in Texas courts. *Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). It requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012). To meet those requirements, the party invoking the court's jurisdiction must show (1) an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) that the injury is "fairly traceable" to the defendant's challenged actions; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 154–55 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). And where the suit "seek[s] to correct an alleged violation of the separation of powers, [the Court's] standing inquiry must be 'especially rigorous.'" *In re Abbott*, 601 S.W.3d 802, 809 (Tex. 2020) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).

**A.** An "undifferentiated public interest in executive officers' compliance with the law" does not confer standing. *Lujan*, 504 U.S. at 577; *see also Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."). The Petition suggests nothing more than that.

Relators are individual voters, political organizations, candidates for office and officeholders, and the Galveston County Judge. Pet. ii–vi. None of them alleges an injury that could support standing. The individual voters do not claim the Proclamation burdens their right to vote; the organizations do not claim it will harm their preferred candidates' electoral prospects (or even identify any such candidates); the current legislators do not claim any personal interest in Election Code sections 85.001(a) and 86.001(a-1); and the hopeful candidates do not claim the Proclamation will affect their races, much less cause them to lose.

None of these potential injuries would suffice to confer standing, even if they were alleged and proved. "No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts." *Brown*, 53 S.W.3d at 302. Even when a "preferred candidate . . . has less chance of being elected," the "harm" is not "a restriction on voters' rights and by itself is not a legally cognizable injury sufficient for standing." *Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000); *see also Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009); *Gottlieb v. FEC*, 143 F.3d 618, 622 (D.C. Cir. 1998). The same is true for an organization. *See Jacobson v. Fla. Sec'y of State*, No. 19-14552, 2020 WL 5289377, at *7 (11th Cir. Sept. 3, 2020). And Relators do not so much as suggest "that a particular candidate's prospects in a future election will be harmed." *Id.* at *9. Finally, this Court has rejected the theory that individual officeholders—including legislators—have standing based on voting for or against legislation. *See Brown*, 53 S.W.3d at 304–06.

12

Galveston County Judge Henry also fails to state a cognizable injury. The Petition states he is being "unlawfully forc[ed] . . . to implement Abbott's unlawful order." Pet. 9. An elected official's belief that a law he is charged with implementing or enforcing is unconstitutional does not support standing to sue because it does not cause a personal injury. *See Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 774 (5th Cir. 1978), *modified*, 594 F.2d 163 (5th Cir. 1979). "[M]atters of public importance" must be resolved "through the adversary system of justice in particular cases involving parties who are genuinely, personally affected." *In re Abbott*, 601 S.W.3d at 809. Judge Henry is not such a party.

But even if this were an injury-in-fact, it cannot support standing to sue *the Secretary* because it is not traceable to any ministerial duty the secretary has performed or failed to perform. Indeed, a writ against the Secretary would not bind county officials, who are not parties to this litigation. *Cf.* 44 Tex. Jur. 3d, *Injunctions* § 232 (observing that non-parties are not bound by an injunction). That means "the effect of the court's judgment on the [Secretary]" would not provide relief. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (emphasis omitted). Relators cannot show that ordering the Secretary to refrain from enforcing the Proclamation will "significantly increase the likelihood" that local election officials will ignore it. *Id.* At its core, then, Relators' petition seeks an advisory opinion.

**B.**    The petition fails for another reason still: Relators fail to meet their burden of offering evidence to support their standing. To establish standing in this original proceeding, Relators must submit evidence. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *e.g.*, *In re Roman*, 554 S.W.3d 73, 76 (Tex. App.—El Paso 2018, no pet.);

*Comm'rs Ct. of Cherokee County v. Cooksey*, 718 S.W.2d 26, 28 (Tex. App.—Tyler 1986, writ ref'd n.r.e.); *see also Lujan*, 504 U.S. at 561–62 ("[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). That evidence must show a "particular personal interest which separates [relator] from the general public." *Hunt*, 664 S.W.2d at 324. Relators did not do so or explain why such evidence is not required; the petition may be dismissed on that basis.

## III. Relators' Constitutional Challenges Are Not Properly Before the Court—and They Would Fail if They Were.

**A.**  Rather than identifying anything the Court can order the Secretary to do, Relators argue at length that the Disaster Act is unconstitutional, Pet. 13–20, and air their desire for a special session of the Legislature, Pet. 20–23. But as discussed above, the Secretary lacks any power under the Disaster Act. *See supra* Part I. And she has nothing to do with calling a special session. So Relators seek an advisory opinion, which this Court may not issue. This petition is consequently not a viable vehicle for assessing the constitutional questions raised in Relators' petition.

**B.**  Even if properly presented, Relators' constitutional challenges would fail. The Disaster Act is presumed constitutional, *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996), and Relators would bear a heavy burden in their facial attacks on its validity, *id.* at 623. Relators could not carry that burden for multiple reasons.

14

*First*, Relators' argument runs headlong into longstanding precedent approving such limited and cabined delegation of legislative power. "Although the Constitution vests legislative power in the Legislature, courts have recognized that in a complex society like ours, delegation of legislative power is both necessary and proper in certain circumstances." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Thus, the Legislature may delegate legislative powers to another branch "as long as the Legislature establishes reasonable standards to guide the agency in exercising those powers." *Id.*; *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454, 466 (Tex. 1997), *as supplemented on denial of reh'g* (Oct. 9, 1997); *accord Mistretta v. United States*, 488 U.S. 361, 372 (1989).

*Second*, Relators' proposed distinction separating the delegation of the power to suspend laws from the delegation of other powers finds no support. Relators presume the Legislature's authority to suspend laws, Tex. Const. art. I, § 28, can never be delegated. But they do not say why that power is different from other legislative powers, which can be delegated when guided by reasonable standards. The Legislature properly exercised its delegation power when it enacted the Disaster Act because it contains adequate standards to guide its exercise. It sets parameters for what constitutes a disaster, provides a standard for how the Governor is to declare one, places limits on his emergency powers, and specifies when the disaster ends. *See supra* at 2–3. And the Legislature reserved for itself the authority to call an end to a state of disaster even if the Governor does not. Tex. Gov't Code § 418.014(c). All this confirms that the Disaster Act is an appropriate delegation of legislative power. For its part, the Proclamation is a proper exercise of delegated authority to

15

"suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business." *Id.* § 418.016(a).

**C.**   Finally, Relators gesture at, without raising, a due-course challenge, arguing that the Proclamation "deprives Plaintiffs of their constitutional rights without due course of law." Pet. 16–17. Relators do not, however, identify any liberty or property interest, much less submit evidence and argument showing how the unidentified interest has been harmed. Their due-course claim is thus deficient on its face.

*   *   *

For these reasons (among others), the Court should not award Relators relief. In explaining its decision, the Court should also dispel any confusion regarding the Secretary's role by clarifying that she does not have a general duty to ensure that the Governor and local officials comply with the Election Code.

## Prayer

The Court should dismiss or deny the petition for writ of mandamus.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Ryan L. Bangert
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Kyle D. Hawkins

Kyle D. Hawkins
Solicitor General
State Bar No. 24094710
Kyle.Hawkins@oag.texas.gov

Lanora C. Pettit
Natalie D. Thompson
Assistant Solicitors General

William T. Thompson
Special Counsel

Beau Carter
Assistant Attorney General

Counsel for Respondent

## Certificate of Service

On September 28, 2020, this document was served electronically on Jared R. Woodfill, lead counsel for Relators, via woodfillservice@gmail.com.

/s/ Kyle D. Hawkins

Kyle D. Hawkins

## Certificate of Compliance

Microsoft Word reports that this document contains 4,334 words, excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ Kyle D. Hawkins

Kyle D. Hawkins

ATTACHMENT B:
EMAIL DATED AUGUST 26, 2020

**From:**       Charles Pinney
**To:**           Donna Stanart
**Subject:**    Re: Questions regarding mail in ballots (EI Response)
**Date:**       Wednesday, August 26, 2020 9:30:48 AM

Hello,

I'll answer your two questions in order:

1. Election Code 86.011(d) is not necessarily a "cure" process, but it does provide a procedure under which the early voting clerk can take certain steps to allow a voter to address certain deficiencies on the carrier envelope after that carrier envelope has been received by the early voting clerk.

   The early voting clerk has a number of different options available under this section, including delivering the carrier envelope back to the voter either in-person or by mail, or notifying the voter by telephone so the voter can correct the defect on the carrier envelope or cancelling that ballot by mail in-person at the early voting clerk's office.  Whichever procedure is used, the corrected carrier envelope must be received before the deadline for receiving the ballot by mail.  This procedure can only be performed by the early voting clerk and must occur before the ballot is sent to the ballot board.  Once the ballot is sent to the ballot board, these procedures are no longer available.

   The early voting clerk is not required to implement these procedures and has the option of determining which of those procedures they wish to implement.  However, whichever procedure they implement must be applied consistently to all voters in the same situation.

2. Election Code 86.006(a-1) provides that the voter may hand-deliver a marked ballot by mail to the early voting clerk's office while the polls are open on election day, but they must present voter ID at the time that they do so.  Under the Governor's July 27, 2020 proclamation, for this November election, that hand-delivery process is not limited to election day and may occur at any point after the voter receives and marks their ballot by mail.

   Because this hand-delivery process can occur at the early voting clerk's office, this may include satellite offices of the early voting clerk.  Typically, this will only happen if the early voting clerk is the county clerk because county clerks will occasionally have satellite offices elsewhere in the county, but it is rare for an elections administrator to have a satellite office. A county clerk's satellite office in a county where the elections administrator is the early voting clerk for that election would not be a valid location for hand-delivery of mail ballots because the elections administrator is the early voting clerk in that situation and the county clerk's satellite office is not the "early voting clerk's office" in that situation.  Ultimately, the availability of hand-delivery of mail ballots at a county clerk's satellite office depends on the identity of the early voting clerk for that specific election.

Please let us know if you have any other questions about this issue or anything else relating to the election.  You can reach us at Elections@sos.texas.gov or 1-800-252-8683, or you can visit our

website at sos.state.tx.us/elections/index.shtml.

Thanks,

**Chuck Pinney**
Attorney -- Elections Division
Office of the Texas Secretary of State
1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701
1.800.252.VOTE (8683)
elections@sos.texas.gov | www.sos.texas.gov/elections

 

*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code.  It is not intended to serve as a legal opinion for any matter.  Please review the law yourself, and consult with an attorney when your legal rights are involved.*

---

**From:** Donna Stanart <donnastanart1@gmail.com>
**Sent:** Tuesday, August 25, 2020 10:26 AM
**To:** Charles Pinney <CPinney@sos.texas.gov>
**Subject:** Questions regarding mail in ballots

**CAUTION:** This email originated from OUTSIDE of the SOS organization. Do not click on links or open attachments unless you are expecting the email and know that the content is safe. If you believe this to be a malicious or phishing email, please send this email as an attachment to Informationsecurity@sos.texas.gov.

Chuck,

Thanks so much for taking my call.

I had two questions we touched on today.

1. In regards to mail in ballots being "cured" during voting, is it the responsibility of the County Clerk or the Ballot Board to call that voter to fix their ballot before it's counted? Also, you had mentioned consistency in that regard. Can you touch on that again?

2. When dropping off mail in ballots, in a county with a county clerk, we know that if there are annexes it is acceptable for voters to drop off their ballots up to election day at any of these annexes. If a county clerk type county were to transition into an election administration before the election, they would not be able to use the county clerk annexes and only be able to drop off at their main office. Is this correct?

Thank you!

--
Donna Stanart
(713) 703 - 9840 - Cell
donnastanart1@gmail.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below:

Maria Mendoza-Williamson on behalf of Kyle Hawkins
Bar No. 24094710
maria.williamson@oag.texas.gov
Envelope ID: 46724246
Status as of 9/30/2020 4:07 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wolfgang PHirczy de Mino, PhD | | wphdmphd@gmail.com | 9/30/2020 4:00:38 PM | SENT |
| Jared Woodfill | | woodfillservice@gmail.com | 9/30/2020 4:00:38 PM | SENT |
| Vince Ryan | | vince.ryan@cao.hctx.net | 9/30/2020 4:00:38 PM | SENT |
| Kyle Hawkins | | kyle.hawkins@oag.texas.gov | 9/30/2020 4:00:38 PM | SENT |
| Lanora Pettit | | lanora.pettit@oag.texas.gov | 9/30/2020 4:00:38 PM | SENT |
| Natalie Thompson | | natalie.thompson@oag.texas.gov | 9/30/2020 4:00:38 PM | SENT |
| Beau Carter | | Beau.Carter@oag.texas.gov | 9/30/2020 4:00:38 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 9/30/2020 4:00:38 PM | SENT |

Associated Case Party: Chris Hollins

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Susan Hays | | hayslaw@me.com | 9/30/2020 4:00:38 PM | SENT |