# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *ET AL.*, *Plaintiffs*, | : : : : | |
| v. | : : | No. 1:20cv01006-RP[1] |
| GREG ABBOTT, ET AL., *Defendants*. | : : : : | |

## *AMICUS CURIAE* BRIEF OF TRAVIS COUNTY

On October 6, 2020, in its first meeting after issuance of the proclamation at issue in this case, the Commissioners Court of Travis County—by a 4-0 vote, with one member absent—authorized the filing of this *amicus curiae* brief on behalf of Travis County, a political subdivision of the State of Texas.

Travis County is fully supportive of, and endorses, the efforts of its County Clerk, Dana DeBeauvoir, to ensure that the process for the November 3 election is both as orderly as reasonably possible under the current exigent circumstances and is conducted in a manner that protects the health and safety of voters and election workers alike. As she explains, Ms. DeBeauvoir views the July 27 proclamation about handling marked mail-in ballots to have been "critical," allowing for implementing health protocols for the election's conduct, including allowing for appropriate social distancing and safe hygiene practices. DeBeauvoir Decl. (ECF No. 18) ¶ 3 at 3.

---

[1] The case *Laurie-Jo Straty, et al. v. Gregory Abbott, et al.*, No. 1:20CV1015-RP, is consolidated with this case until pending motions for preliminary injunction are resolved. Order of Oct. 6, 2020 (ECF No. 21). This *amicus* brief therefore is filed as to both cases.

Expanding the opportunity to drop off mail-in ballots during the early voting period, the July 27 proclamation's revisions to Texas election law was consistent with the emergency powers that the Legislature has given the Governor to help handle the public health and safety issues arising from the current pandemic. It "enhance[s] the safe and efficient processing of voters and ballots" and "increase[s]" the opportunity for voters to "safely" exercise their right to vote. *Id*. ¶ 9 at 8.

In contrast, by compressing voters into one location, the October 1 proclamation *increases* the threat to public health and safety to voters —using the mail-in ballot option by its hasty and unexplained retreat from the July 27 measures. As seasoned an election administrator as the Travis County Clerk fears that the tardy October 1 switch in rules will "make both election workers and voters less safe." *Id*. ¶ 10 at 9. This view is eminently reasonable and plausible and is not counter-balanced by a single finding, recitation, or other statement in the October 1 proclamation.

I. **THE OCTOBER 1 PROCLAMATION VIOLATES THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION BECAUSE IT IS FACIALLY ARBITRARY AND AN EXERCISE OF DELEGATED LEGISLATIVE AUTHORITY UNGUIDED BY ANY COGNIZABLE STANDARDS.**

The Texas Legislature has given the Governor the authority to act in a legislative capacity to temporarily revise and modify the operation of state law in order to meet public health and safety needs arising from a public health emergency such as the COVID-19 pandemic. The Texas Legislature, however, has most definitely *not* given the Governor authority to act in a legislative capacity to revise and modify the operation of state law—even disaster declaration-based state law—on grounds divorced from public safety and health issues. Stated another way, the Governor has

been conferred emergency powers to temporarily change the law to protect public health and safety. He has not been conferred the authority to change the law for reasons not tied to health and safety concerns.

The Governor's October 1 proclamation, imposing an overnight middle-of-the-election change in the rules for casting marked mail ballots, was not linked in any way to health and safety issues. In fact, the proclamation does not include a single justification, much less one grounded in protecting public health and safety, for the abrupt shift it mandates from its predecessor proclamation involving the same Election Code provision, § 86.006(a-1). It is simply an *ipse dixit*: make this change, and make it now, simply because the Governor is telling you to make it.

The Due Process Clause of the Fourteenth Amendment prohibits arbitrary action of precisely this sort. And the constitutional rules of due process further prohibit the unfettered exercise of delegated legislative powers without any guiding standard whatsoever. The Governor's October 1 proclamation's revision of § 86.006(a-1)'s operation fails this constitutional test. It is arbitrary because it is unexplained, proffering no justification. And, unlike earlier gubernatorial proclamations and declarations during the 7-month period of governance under emergency powers, it purports to be the legislative exercise of a power delegated by the Legislature, but this exercise is unconstrained by the core standard underpinning the delegation: that it be tied to public health and safety concerns. The October 1 shift in election rules is completely untethered from such concerns and does not even purport to rest on them.

The Governor has no free-roaming authority to revise state election laws, and to the extent such free-roaming authority is exercised—as it was on October 1—it is illegal.

For this reason, Travis County supports the parties' requests for a preliminary injunction enjoining implementation of the October 1 proclamation, freeing the County and its County Clerk (a defendant in this lawsuit) from any further obligation to implement it and allowing them to return to the process that had been approved when voting had already begun.

The three sub-parts immediately below briefly recount the evolution of the Governor's exercise of emergency powers to revise the operation of Texas election laws during the 2020 election.

**A. March Disaster Declaration: Based On Public Health Emergency**

Acting pursuant to powers that the Texas Legislature conferred on him in subchapter B of Chapter 418 of the Texas Government Code, the Governor of Texas issued a proclamation on March 13, 2020, certifying that COVID-19 poses an imminent threat and declaring a state of disaster for all Texas counties. The pandemic's threat has been a continuous one since then, and the Governor has regularly issued proclamations extending the March disaster declaration.[2]

**B. July Proclamation On Handling Marked Mail Ballots: Based On Public Health Emergency**

On July 27, 2020, still acting under his disaster declarations under Subchapter B of the Government Code's Chapter 418, the Governor issued a proclamation that,

---

[2] The County may differ with the Governor on some implementation details associated with the proclamations, but not on the essential premise of the disaster declarations: that Texas counties are confronted with a once-in-a-lifetime public health emergency.

4

among other things, suspended Section 86.006(a-1) of the Texas Election Code for the November 3, 2020, election:

> to the extent necessary to allow a voter to deliver a marked mail ballot in person to the early voting clerk's office prior to and including on election day.

The July 27 proclamation includes the specific reasons that the qualified suspension of § 86.006(a-1) is justified as an exercise of the Governor's legislative-conferred authority under Chapter 481 of the Government Code:

- Implementation by county election offices of "health protocols to conduct elections safely" and protect election workers and voters is "necessary," (8th "whereas" clause);

- Strict compliance with § 86.006(a-1) would hinder "necessary action in coping with the COVID-19 disaster," (12th "whereas" clause); and

- The electoral modifications was needed to "cop[e] with a disaster," 13th "whereas" clause).

This is an exercise by the Governor within the emergency powers delegated to him by the Legislature. It is directly linked to the need to protect public health and safety—of both voters and election workers—during the election that is underway.

**C.    October 1 Proclamation Changing Rules For Handling Marked Mail Ballots: *Not* Based On Public Health Emergency**

The October 1 proclamation is devoid of even one iota of any justification, much less a justification grounded in protecting the public health and safety during the election, for its about-face on handling marked mail-in ballots. The nineteen "whereas" clauses say nothing to justify the more restrictive rules. Nor do the introductory comments leading to the sub-paragraph (1) change. The Governor says nothing more than that he is ordering a change in election procedures from the ones

5

he had ordered in July. No standard is given, cross-referenced, or implied. It's just handed down as a regal *fait accompli*. This current effort is not linked, directly or even indirectly, to public health and safety matters.

II. **THE OCTOBER 1 PROCLAMATION IS AN ARBITRARY EXERCISE OF GOVERNMENTAL AUTHORITY THAT THE GOVERNOR HAS NOT BEEN GIVEN, AND CONSEQUENTLY IT VIOLATES DUE PROCESS.**

Today (October 7), the Supreme Court of Texas issued an opinion in *In re Hotze*, No. 20-0739), upholding as a matter of state law the key elements of the Governor's July 27 proclamation. It denied mandamus to relators who requested that the July 27 proclamation be overturned and Texas election law be returned to its pre-July 27 status. Necessarily upheld in this ruling are the health and safety justifications that underpin the July 27 rules for handling marked mail ballots. Relatedly, delivering the opinion of the Court, Chief Justice Hecht specifically noted that disrupting an election such as this one that is already underway, particularly "long-planned election procedures," would "threaten voter confusion." Slip Op. 5.

A concurrence highlights the Governor's sole responsibility for his proclamations and the fact that those who must carry out the duties prescribed by the proclamations are local election officials such as County Clerk DeBeauvoir. Concurrence at 3. As stated there, the proclamations are "issued *unilaterally* by the Governor." *Id.* (emphasis added). "[T]he proclamation itself . . . is the source of the local officials' obligation to adjust their practices." *Id.* at 4.

Today's ruling in *Hotze* spotlights the federal constitutional flaws in the October 1 proclamation. The place that the local election administrator—and it would seem,

this Court, too—must look for justification and direction on how to handle election procedures is the proclamation, not some set of follow-up instructions.

Core legislative powers may not be willy-nilly delegated to executive branch officials. There must be standards attached to guide in some fashion those who are given power by the Legislature to act in a legislative fashion. *Whitman v. American Trucking Ass'ns., Inc.*, 531 U.S. 457, 472 (2001); *see also Dep't of Transportation v. Ass'n of American Railroads*, 135 S.Ct. 1225, 1241 (2001) (Thomas, J., concurring).

These constitutional principles restricting unguided, or standardless, delegations of legislative authority involve more than just basic separation of power issues. They also operate on states through the Fourteenth Amendment's Due Process Clause. In *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), the Supreme Court applied the nondelegation doctrine to invalidate a private delegation and, while its constitutional foundation is not made explicit, it has been more recently described as a due process case, not one of separation of powers. *See, e.g., Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 707 (5th Cir. 2017).

Further informing the due process inquiry is the principle that purely arbitrary government actions violate the Due Process Clause. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1996) (doctrine bars "exercise of power without any reasonable justification in the service of a legitimate governmental objective"). The Governor's unexplained, foundationless October 1 proclamation fits comfortably (or not) in the "arbitrary" orbit. The exercise of emergency power is to be carefully bounded by the courts lest it be cut loose from law altogether. The framework for

7

the Governor's exercise of emergency powers is the need to immediately put in place "emergency public health measures." *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020) (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)). But the October 1 proclamation is not attached to that framework—and cannot be since it *increases* the risk to the public health and safety rather than decreases it.

In this particular situation, the non-delegation doctrine and the people's protection against arbitrary government action come together to bar enforcement of the October 1 proclamation's modification to mail-in ballot drop-off. The Governor is purporting to exercise a power that he either has not been given, or if he has it, has been given with no discernible standards other than those concerning public health and safety in an emergency. His October 1 proclamation contains no explanation for the rule changes it makes, and it certainly does not purport to rest on the only possible basis for action: public health and safety.

As a result, this is a prime example of government action of the most serious kind, in the most problematic of circumstances (changing the rules in the middle of an election in the middle of a pandemic), without even a nod toward justification. In short, this is the way government, even government in an emergency, is not supposed to work. The Due Process Clause sets limits, and the October 1 proclamation is not within them.

## Conclusion

Travis County is anxious to protect the public health and safety and to conduct the election in as protective and non-disruptive a way as reasonably possible. The

8

October 1 proclamation clashes with Travis County's objectives. Thus, Travis County supports issuance of a preliminary injunction that rescinds the October 1 proclamation.

        Respectfully submitted,

        \_\_\_/s/ *Renea Hicks*_____
        Renea Hicks
        Attorney at Law
        Texas Bar No. 09580400

        LAW OFFICE OF MAX RENEA HICKS
        P.O. Box 303187
        Austin, Texas 78703-0504
        (512) 480-8231
        fax (512) 480-9105
        rhicks@renea-hicks.com

        DAVID A. ESCAMILLA
        County Attorney, Travis County
        P. O. Box 1748
        Austin, Texas 78767
        Telephone: (512) 854-9513
        Facsimile: (512) 854-9316

By:   /s/ Sherine E. Thomas
        SHERINE E. THOMAS
        State Bar No. 00794734
        sherine.thomas@traviscountytx.gov

        ATTORNEYS FOR *AMICUS CURIAE* TRAVIS COUNTY

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2020, I electronically submitted the foregoing with the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to the following:

Chad W. Dunn
Brazil & Dunn
4407 Bee Caves Road
Building 1, Suite 111
Austin, TX 78746
chad@brazilanddunn.com

K. Scott Brazil
Brazil & Dunn
13231 Champion Forest Dr. Suite 406
Houston, TX 77069
scott@brazilanddunn.com

Molly Danahy
Campaign Legal Center
14thst. Nw, Ste. 400
Washington, DC 20005
mdanahy@campaignlegalcenter.org

Ravi Doshi
Campaign Legal Center
101 14th St. NW, Suite 400
Washington, DC 20005
Mark P. Gaber
Campaign Legal Center
1101 14thst. Nw, Ste. 400
Washington, DC 20005
mark.gaber@gmail.com

Caleb Jackson
Campaign Legal Center
1101 14thst. Nw, Ste. 400
Washington, DC 20005
*Attorneys for Plaintiffs*

Patrick K. Sweeten
Texas Attorney General
300 West 15th St. - 9th Flr
Austin, TX 78701
Patrick.Sweeten@oag.texas.gov
Attorney for Greg Abbott and Ruth Hughs

Justin C. Pfeiffer
Fort Bend County Attorney's Office
401 Jackson Street, Third Floor
Richmond, TX 77469
justin.pfeiffer@fortbendcountytx.gov
*Attorney for John Oldham*

Susan L. Hays
Law Office of Susan Hays, P.C.
P.O. Box 41647
Austin, TX 78704
hayslaw@me.com
*Attorney for Chris Hollins*

/s/ *Renea Hicks*
Renea Hicks, Attorney at Law

/s/Sherine E. Thomas
Sherine E. Thomas
Assistant Travis County Attorney