IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS; NATIONAL LEAGUE OF UNITED LATIN AMERICAN CITIZENS; LEAGUE OF WOMEN VOTERS OF TEXAS; RALPH EDELBACH; BARBARA MASON; MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES; and TEXAS LEGISLATIVE BLACK CAUCUS;<br><br>       Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas; RUTH HUGHS, in her official capacity as Texas Secretary of State; DANA DEBEAUVOIR, in her official capacity as Travis County Clerk; CHRIS HOLLINS, in his official capacity as Harris County Clerk; and JOHN W. OLDHAM, in his official capacity as Fort Bend County Elections Administrator;<br><br>      Defendants. | CIVIL ACTION NO. 1:20-cv-01006-RP |

**STATE DEFENDANTS' OPPOSED MOTION TO EXCLUDE THE EXPERT DECLARATIONS OF DANIEL A. SMITH AND MATTHEW A. BARRETO**

An expert witness must base his or her conclusions on reliable principles and methods. *See* Fed. R. Evid. 702. Scientific evidence and reasoning that is not grounded in the "methods and procedures of science" is no more than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). That is the case here. Daniel A. Smith and Matthew A. Barreto offer opinions not grounded in the methods and procedures of science. Their reasoning hinges on scant evidence concerning public perception of the United States Postal Service (USPS). And their statistical analysis fails to consider the percentage of absentee voters who will choose to

1

deliver their mail-in ballots by mail, instead lumping all absentee voters into one category to project

data that aligns with Plaintiffs' preordained conclusions. Such analysis is neither relevant nor reliable.

For this reason, the State Defendants ask the Court to exclude the declarations of Smith and Barreto.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 1, Governor Abbott issued a proclamation "enhancing ballot security protocols

for the in-person delivery of marked mail ballots for the November 3rd Election. Under this

proclamation, voters who are eligible to vote by mail and choose to deliver their ballots in-person

must deliver their ballots to a single early voting office location as publicly designated by a county's

early voting clerk." *See* Press Release, Office of the Texas Governor, Governor Abbott Issues

Proclamation Enhancing Ballot Security (Oct. 1, 2020), https://gov.texas.gov/news/post/governor-

abbott-issues-proclamation-enhancing-ballot-security. Plaintiffs filed an emergency motion for a

temporary restraining order and a preliminary injunction to enjoin the enforcement of the Governor's

proclamation. Plaintiffs attached two expert declarations to support their position: one from Smith

and one from Barreto. *See* Pls.' Mot. for TRO and PI, Ex. 19 (Smith), Ex. 20 (Barreto). The State

Defendants now move to exclude both expert declarations as well as any testimony these experts may

offer.

## STATEMENT OF THE ISSUE

This motion presents a single issue: Should the Court exclude the declarations and testimony

of Smith and Barreto? The answer is yes because the experts' reasoning and conclusions are neither

relevant nor reliable.

The party seeking admission of expert testimony must establish that "(a) the expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or to

determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

product of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." FED. R. EVID. 702. "[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). That is the "overarching concern" when assessing the admissibility of expert testimony. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

## ARGUMENT AND AUTHORITIES

**I.      Both experts rely on an unquantified public perception concerning the reliability of the USPS to bridge the analytical gap between the data and their opinions.**

In *General Electric Co. v. Joiner*, the Supreme Court recognized that "[t]rained experts commonly extrapolate from existing data." 522 U.S. 136, 146 (1997). But that does mean a district court must "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* Indeed, in such a case, "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* That is precisely the case here. Smith and Barreto speculate, based on scant evidence concerning public perception of the USPS, that swaths of absentee voters in Texas will forego the option to cast their absentee ballot by mail and will instead deliver those ballots in person. That data simply does not support such an extrapolation. Indeed, at times, the data is contradictory.

Smith's declaration repeatedly refers to an amorphous concern amongst absentee voters in Texas about the security and delivery times of the USPS. *See* ECF 15-19 ¶¶ 9, 20, 49, 51. But Smith does not offer any authority to support this purported concern amongst voters. Nor does Smith offer any authority to quantify the alleged increased demand among Texas voters for absentee ballots and in-person delivery locations. Indeed, the only support Smith offers to support the alleged concern amongst absentee voters about the USPS is a statement from the USPS website advising absentee voters to allow a week for mail to arrive. *See id.* at ¶ 20. Without more support, Smith's declaration

that concerns amongst Texas absentee voters are driving an increased demand for in-person ballot delivery locations can be considered nothing more than Smith's unsupported speculation.

Barreto's declaration fares no better. Barreto refers to the same concern amongst absentee voters about the security and delivery of absentee ballots through the USPS. *See, e.g.*, ECF 15-20 ¶¶ 19, 27. He projects that such concerns will drive absentee voters to forego mailing their ballots and instead deliver their ballots to in-person delivery locations. *See id.* ¶¶ 23, 27. Barreto further suggests Texas Latinos and African–Americans are particularly distrusting of the USPS and significantly less likely to submit their ballots by mail. *Id.* at ¶¶ 26, 27, 29. But Barreto's data does not support these conclusions. For instance, one of the primary sources Barreto relies on in his declaration states that "three-fourths of Americans rate the performance of the U.S. Postal Service as 'good' or 'excellent' according to Gallup polls conducted since 2012 (Gallup 2019)." Andrew Menger & Robert M. Stein, *Choosing the Less Convenient Way to Vote: An Anomaly in Vote by Mail Elections*, 73 POL. RES. Q. 196 (2019), https://static1.squarespace.com/static/599b81d8e6f2e1452a4955ea/t/5d5c6af024f9f70001cbeeb2/1566337776703/Revised+Social+Rewards+of+Voting+6_8_19.pdf. Indeed, according to that same source, more than 80% of both frequent and infrequent voters trust the USPS to securely deliver their ballots in a timely fashion. *See id.*

Moreover, Barreto's own survey provides rebuts his conclusion that Texas Latinos and African–Americans are significantly more distrusting of the USPS. In his survey, Barreto asked Texas Latinos and African American about their confidence the vote by mail process. ECF 15-20 ¶ 26. The results: 65% of Latino voters said they were very confident or somewhat confident that their ballot would be counted; and 67% of African American voters were very confident or somewhat confident that their ballot would be counted in the election. *Id.* Because of this contradictory evidence, Barreto's opinion cannot be considered either relevant nor reliable. His conclusions are no more than subjective belief and unsupported speculation.

Smith and Barreto's opinions regarding the interrelation between concerns about the USPS and in-person delivery locations are also logically problematic. Both experts suggest that concerns about the USPS will drive absentee voters to in-person delivery locations. But this reasoning is an oversimplification. In deciding to vote at an in-person voting location rather than by mail, an absentee voter must perform a careful balancing act, weighing the risk of contracting Covid-19 by visiting an in-person delivery location against concerns about the reliability of the USPS and the convenience of mail-in voting. But both experts ignore this logical step, simply concluding that voters will choose to vote at in-person voting locations because of concerns about reliability at the USPS.

The experts also ignore guidance from local voting officials, encouraging absentee voters to use the mail instead of showing up in-person at delivery locations. For instance, in late August, Harris County Clerk Chris Hollins instructed absentee voters in a local interview that "[i]f you're eligible to vote by mail, we want you to vote by mail. . . . Voting by mail is the safest way to vote, and all those who are eligible to vote should strongly consider casting their vote in that manner — not only for themselves but as a service, a duty to other residents." Alexa Ura, *Texas' Most Populous County Sending Mail-in Ballot Applications to Millions of Registered Voters*, TEX. TRIBUNE (Aug. 25, 2020), https://www.texastribune.org/2020/08/25/texas-vote-by-mail-harris/.

In short, both experts unjustifiably extrapolate scant evidence concerning public perception of the USPS to project large masses of absentee voters resorting to in-person delivery locations. As discussed above, the evidence marshalled by the experts simply does not support such a conclusion. There is simply too large of an analytical gap between the data and the offered opinions to conclude that the declarations are anything but mere *ipse dixit*. For this reason, Defendants ask that the Court exclude both expert declarations as well as any testimony these experts may offer.

**II.      Both experts' statistical analysis ignores the percentage of absentee voters who plan to vote by mail.**

It is a truism across the federal courts that an expert's opinion must be based on sufficient facts or data in order to be admissible. *See* FED. R. EVID. 702(b); *United States v. Coutentos*, 651 F.3d 809, 820 (8th Cir. 2011); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904–05 (7th Cir. 2007). The Fifth Circuit in particular has recognized that an expert opinion must consider possible variables and account for obvious alternative explanations in formulating an opinion. *See Muñoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000); *see also Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir.1988) (explaining that a failure to control for other explanatory variables made expert's table "essentially worthless").

Here, both Smith and Barreto have failed to account for the percentage of absentee voters who plan to vote by mail rather than at in-person delivery centers in their statistical analyses. Nowhere in either declaration do the experts project historical data concerning the number of absentee voters who previously voted by mail to the current election. Nor do they tease out the percentage of absentee voters in each county that will likely deliver their ballots by mail rather than at in-person delivery centers. Rather, the experts extrapolate their dire narrative based on the total number of projected absentee voters. *See, e.g.*, Ex. 19 ¶¶ 12, 26; Ex. 20 ¶¶ 32-35.

An analogy in Smith's declaration makes this analytical flaw clear. In discussing the costs of voting, Smith states that a change to the number of physical ballot delivery sites is "akin to when election officials change or reduce the number of polling locations, voters who had planned to drop off their absentee ballot at an alternative location, particularly if it had been previously discussed or announced by local election officials, will face the additional burden of having to obtain additional information to find out where they may drop off their absentee ballot." Ex. 19 ¶ 24. But this comparison ignores the critical distinction between in-person voting at polling locations on election day and absentee voting. Absentee voters have the option to deliver their ballots via the mail; in-

person voters on election day do not. Smith's analogy, and indeed his entire declaration, ignores the impact of this distinction.

Barreto's analysis similarly ignores the division between absentee voters who cast their ballots by mail instead of at in-person delivery locations. For example, Barreto emphasizes the number of absentee ballots that have been requested in some of Texas's largest counties. *See* Ex. 20 ¶ 35 ("Harris County has already received 215,00 absentee ballot requests and expected thousands more for the November election. In Travis County estimates are that 100,000 voters will vote using absentee ballots, while in Fort Bend officials estimate as many as 50,000 mail ballot requests. These represent dramatic increases over the November 2016 election as well as the July 2020 primary runoff, and counties should be allowed to reduce congestion and increase access for voters who wish to drop off their ballots and not use USPS.") He then juxtaposes the total number of absentee ballot requests with the number of in-person delivery locations in each county to demonstrate a disparity. *See id.* at ¶¶ 35-39. But this juxtaposition ignores the percentage of absentee voters that will vote by mail rather than in-person. Without consideration of this important variable, Barreto's predictions as to congestion at the in-person voting locations can be considered no more than speculation.

In sum, neither expert declaration sufficiently accounts for the percentage of absentee voters who will choose to cast their ballot via the mail instead of in person at a physical delivery location. As such, the resulting analyses are neither relevant nor reliable. For this reason, Defendants ask the Court to exclude both expert declarations as well as any testimony these experts may offer.

Date: October 8, 2020

KEN PAXTON
Attorney General of Texas

Respectfully Submitted.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Associate Deputy for Special Litigation

TODD LAWRENCE DISHER
Deputy Chief for Special Litigation

WILLIAM T. THOMPSON
Special Counsel

ERIC A. HUDSON
Special Counsel

KATHLEEN T. HUNKER
Special Counsel

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
todd.disher@oag.texas.gov
will.thompson@oag.texas.gov
eric.hudson@oag.texas.gov
kathleen.hunker@oag.texas.gov

**COUNSEL FOR THE GOVERNOR OF TEXAS AND
THE TEXAS SECRETARY OF STATE**

## CERTIFICATE OF CONFERENCE

I certify that on October 8, 2020, I conferred with counsel for Plaintiffs about the foregoing motion. Plaintiffs oppose.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2020, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

0