IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiff <br><br> vs. <br><br> GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*, <br><br> Defendants. | Civil Action No. 1:20-cv-1006-RP |

**BRIEF OF *AMICUS CURIAE* DISABILITY RIGHTS ORGANIZATIONS IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

SUMMARY ........................................................................................................................ 1

INTERESTS OF *AMICI* .............................................................................................. 1

DISCUSSION ................................................................................................................. 3

I.     Voters with disabilities are considerably more vulnerable to COVID-19 than the
       general population. ....................................................................................................... 3

II.    Multiple drop-off sites are needed regardless of the pandemic. ....................................... 5

III.   The impacts on voters with disabilities further support Plaintiffs' requested
       injunctive relief. ....................................................................................................... 6

CONCLUSION ................................................................................................................. 9

## SUMMARY

Disability Rights Texas, ADAPT Texas, and REV UP Texas respectfully submit this *amicus curiae* brief in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 15), set for hearing on October 8, 2020. *Amici* are nonprofit organizations whose purpose is to protect the rights of individuals with disabilities, including their voting rights.

Governor Abbott's October 1 Order – which suddenly and belatedly limited each Texas county to just one absentee ballot drop-off location – threatens these rights, particularly for voters with disabilities living in populous or geographically large counties. The Order exacerbates the risks that these voters already face in attempting to vote in the midst of a pandemic, by forcing them to a single, often distant location that will face substantial crowding. The Order severely complicates the logistics of returning absentee ballots because it forces many of these voters to travel long distances for lengthy periods, particularly in light of the anticipated delays with the United States Postal Service ("USPS"). It affects these changes at a highly inopportune time, well after the additional drop-off locations had been advertised and voters had begun planning accordingly – no small endeavor for voters with disabilities who often have far more limited transportation options. And it offers no legitimate, let alone persuasive, basis for these restrictions.

Under these circumstances, preliminary injunctive relief is warranted and prudent: Plaintiffs are highly likely to succeed on their claims, voters will be harmed should the Order stand in the interim, and the equities weigh squarely in Plaintiffs' favor.

## INTERESTS OF *AMICI*

Disability Rights Texas (DRTX) is a nonprofit organization designated to serve as the Protection and Advocacy System ("P&A") for the State of Texas. *See* Tex. Gov. Exec. Order No. DB-33, 2 Tex. Reg. 3713 (1977); Tex. Att'y Gen. Op. No. JC-0461 (2002). Its purpose is to protect

and advocate for the legal and human rights of individuals with disabilities, and it is authorized to do so under the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15041 et seq.; Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. §§ 10801 et seq.; and Protection and Advocacy for Individual Rights Act, 29 U.S.C. § 794e. In accordance with its federal mandate, Disability Rights Texas has the authority, among other things, to pursue administrative, legal, and other appropriate remedies to ensure the protection of rights of persons with disabilities. 29 U.S.C. § 794e(f)(3); 42 U.S.C. § 10805(a)(1)(B). One of DRTX's priority areas is safeguarding the voting rights of people with disabilities. DRTX has filed numerous amicus briefs to ensure that courts and litigants follow the antidiscrimination mandates in the Americans with Disabilities Act (ADA).

ADAPT Texas is a chapter of the national grass-roots disability rights activist organization that believes in using non-violent civil disobedience, among other strategies, to work towards social change for disabled citizens. ADAPT Texas advocates to ensure that the rights of people with disabilities are not diminished in any way, including the right to vote privately and independently.

REV UP Texas is a non-partisan, statewide, collaborative organization that empowers, educates, and provides outreach to the disability community and its allies (family members, supporters, professionals, the public, and policy makers). These efforts focus upon accessibility of polling sites; the rights of people with disabilities in the voting process; inclusive voter registration; education on disability issues; and mobilization of the disability vote.

**DISCUSSION**

**I.** **Voters with disabilities are considerably more vulnerable to COVID-19 than the general population.**

Texas has afforded persons with disabilities the right to vote by absentee ballot since 1935.[1] Currently, the Texas Election Code provides that "[a] qualified voter is eligible for early voting by mail if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health."[2]

Litigation prompted by the COVID-19 pandemic has provided additional guidance on the scope of these criteria. The Texas Supreme Court recognized that the risk of contracting the virus is "greater for certain persons or in certain situations," and that "a voter can take into consideration aspects of his health and his health history that are physical conditions in deciding whether, under the circumstances, to apply to vote by mail because of disability." *In re State of Texas*, 602 S.W.3d 549, 560 (Tex. 2020). Thus, persons with underlying health conditions that render them particularly at risk from COVID-19 are entitled to vote absentee specifically for the purpose of avoiding crowded polling places.

This rationale tracks the clear scientific evidence that people with underlying health conditions are at a higher risk for death and severe disease from COVID-19 than people without these conditions. *In re State of Texas*, 602 S.W.3d at 550; *People First of Alabama v. Merrill*, No. 2:20-CV-00619-AKK, 2020 WL 3207824, at *1 (N.D. Ala. June 15, 2020); CDC COVID-19 RESPONSE TEAM, MORBIDITY & MORTALITY WEEKLY REPORT, PRELIMINARY ESTIMATES OF THE PREVALENCE OF SELECTED UNDERLYING HEALTH CONDITIONS AMONG PATIENTS WITH CORONAVIRUS DISEASE 2019 — UNITED STATES, FEBRUARY 12–MARCH 28, 2020, at 382

---

[1] Act of May 17, 1935, 44th Leg., R.S., ch. 300, § 1, 1935 Tex. Gen. Laws 700, 700.
[2] TEX. ELEC. CODE § 82.002(a).

(Mar. 31, 2020).[3] Persons with disabilities are three times more likely than adults without disabilities to have heart disease, stroke, diabetes, cancer, or other preexisting conditions.[4] According to CDC data, while the risks posed by COVID-19 increase as patients age, people with chronic conditions of *all* ages face higher risks; the data shows that those who have an underlying condition are six times more likely to be hospitalized and twelve times more likely to die than those without an underlying condition. *See* CDC COVID-19 RESPONSE TEAM, MORBIDITY & MORTALITY WEEKLY REPORT, CORONAVIRUS DISEASE 2019 CASE SURVEILLANCE — UNITED STATES, JANUARY 22–MAY 30, 2020, at 763, Table 3 (June 19, 2020).[5] In *every* age bracket, the rate of hospitalization and death is higher for those with chronic conditions. *Id.* For this reason and others, the CDC has concluded that its findings "highlight the continued need for community mitigation strategies, especially for vulnerable populations." *Id.* at 764.

Members of *Amici's* organizations are one such vulnerable population. Because of the risks to their health, voting absentee is far preferable to in-person voting. Medical experts have advised that maintaining social distance and minimizing contact with others is critical to preventing an infection of COVID-19. In-person voting necessarily involves being around other people who may be ill with COVID-19. In populous counties like Travis and Harris, Governor Abbott's October 1 Order limiting drop-off sites to one per county means that early absentee voting will also involve exposure to crowds and a lack of social distancing. *See* ECF No. 8-1 (Hollins Decl.) ¶ 20 ("If we are forced to reduce to one location, I anticipate that toward the end of the early voting and especially on Election Day, we will see massive lines to return ballots in person.")

---

[3] Available at http://dx.doi.org/10.15585/mmwr.mm6913e2 (last visited October 6, 2020).
[4] See Coronavirus Disease 2019 (COVID-19): People with Disabilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited October 6, 2020).
[5] Available at http://dx.doi.org/10.15585/mmwr.mm6924e2 (last visited October 6, 2020).

**II.** **Multiple drop-off sites are needed regardless of the pandemic.**

Restricting ballot drop-off to a single location will specially burden voters with disabilities in other tangible ways, too. As *Amici's* members know all too well, these voters often face a series of additional obstacles, particularly when voting at distant locations. As set forth below, the experiences of voters in Travis and Harris Counties – both disproportionately harmed by the October 1 Order – are illustrative.

Kathryn Nowlin is a 34-year old resident of Harris County and a member of ADAPT. She lives with a family member and is pursuing her bachelor's degree. She has rheumatoid arthritis, fibromyalgia, and spinal stenosis. She uses a power wheelchair and travels via bus for transportation, as she is unable to drive. She had intended to drop off her ballot at a site close to her home, but its closure has disrupted those plans. The sole remaining drop-off site, the NRG Arena in a central part of Houston, is simply too far: a trip of that distance and duration on a bus, while seated in her wheelchair, would cause her significant fatigue and pain. Her disabilities make such a long-distance round-trip impossible. Ms. Nowlin now does not know how she will cast her ballot.

David Wittie is a 64-year old resident of Travis County and is a member of REV UP Texas and ADAPT. He is a voter with post-polio syndrome and uses a power wheelchair. He depends on the fixed-route bus system in Austin to get around the city. He had planned to use the nearest accessible drop-off site for his mail-in ballot because he has concerns about the reliability of his mail, but that location will be closed should the October 1 Order stand. The sole remaining site, by contrast, is not accessible to him. He does not yet know how he will cast his ballot.

These are examples of systemic issues that will impact countless voters with disabilities should the October 1 Order stand, but they are by no means comprehensive. Lengthier travel times introduce all manner of complexity for *Amici's* membership – for example, necessitating breaks

for bathrooms, medication, or rest, any of which can be a substantial ordeal. Crowded locations risk anxiety and other sensory issues for voters with conditions such as autism. And as noted in the prior section, many of these voters have preexisting conditions that make them more susceptible to COVID-19, adding another layer of risk to a single drop-off location, which will necessarily be far more crowded than if the additional locations are maintained. Likewise, the risk of transmission during transit will also increase, as voters spend longer times on public transit traveling to and from more distant drop-off sites. Just like Ms. Nawlins and Mr. Wittie, people with disabilities are more likely to rely on public transportation to drop off their mail-in ballots, and public transportation has the highest COVID death rate among all modes of commute.[6]

Nor is voting by mail an adequate alternative, especially as Election Day nears. Members do not trust that their votes will be counted if submitted by mail — and with good reason. Two federal judges have recently stepped in to enjoin the U.S. postal service from implementing procedural changes that they found would adversely impact the delivery of ballots. And, as detailed in Plaintiffs' Motion, the USPS has specifically warned that there is a significant risk in Texas that mailed ballots may not be returned in time to be counted. (Pl. Mot. for TRO at 6-7 (citing USPS letter)). Accordingly, just like Ms. Nowlin and Mr. Wittie, many of *Amici's* members planned to take advantage of the counties' drop-off sites.

## III. The impacts on voters with disabilities further support Plaintiffs' requested injunctive relief.

As Plaintiffs have compellingly demonstrated, the Governor's October 1 Order imposes substantial hardship on all voters who are eligible for an absentee ballot, especially in more populous and geographically larger counties. Yet, the impact on voters with disabilities is worse

---

[6] *See* Christopher R. Knittel and Bora Ozaltun, What Does and Does Not Correlate with COVID-19 Death Rates, National Bureau of Economic Research Working Paper Series. Working Paper 27391 (June 2020), available at https://www.nber.org/papers/w27391.pdf.

still, injecting difficulty into virtually every step of the process. These hardships weigh strongly against the legality of the Order, and thus in support of the Plaintiffs' request for injunctive relief.

Plaintiffs' first claim is for violation of the fundamental right to vote under the First and Fourteenth Amendments. Dkt. 16 at 16-18. When analyzing the constitutionality of a restriction on voting, the Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). As explained at length above, the burden to voters with disabilities are significant. With the delays to the USPS, and the inherent danger and difficulty of in-person voting during a pandemic, reasonably located ballot drop-off locations became the only viable option for *Amici's* members and many others like them. The October 1 Order effectively stripped that option, and it did so without any legitimate basis or purpose, as detailed at length in Plaintiffs' motion.

Likewise, under Plaintiffs' second claim for arbitrary disenfranchisement under the equal protection clause of the Fourteenth Amendment, the Court must inquire whether the State has, "by later arbitrary and disparate treatment, value[d] one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05; *see also id.* at 106 (finding that voting procedures that "vary not only from county to county but indeed within a single county" are not "sufficient [to] guarantee[] equal treatment"); *see*, *e.g.*, *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."). As explained above, the "arbitrary and

disparate" treatment of voters in affected counties is markedly heightened for voters with disabilities.

It also bears noting that the October 1 Order appears to run afoul of the Americans with Disabilities Act ("ADA"), which protects the rights of voters with disabilities. While not pled by Plaintiffs, these claims are available to *Amici*, its members, and voters with disabilities generally. The requested injunctive relief thus delivers the added benefit of avoiding violation of laws and regulations that are specifically meant to tear down barriers for persons with disabilities. Further, as noted, the relevant merits inquiry for Plaintiffs' pled claims requires an assessment of the State's basis for the sudden restriction on drop-off locations. The State's generic interest in voting security is not enough to justify a regulation that violates the ADA, particularly given the scant evidence that the October 1 Order somehow improves security. *See People First of Alabama v. Merrill*, No. 2:20-CV-00619-AKK, 2020 WL 3207824, *25 (N.D. Ala. June 15, 2020), appeal dismissed, No. 20-12184-GG, 2020 WL 5543717 (11th Cir. July 17, 2020) (granting preliminary injunction against Alabama's photo ID requirement for absentee voting; plaintiffs would likely prevail on ADA claim because the law would require disabled voters, who are at higher risk for COVID-19 complications, to forego social distancing guidelines).

For example, the ADA broadly protects against discrimination on the basis of disability (42 U.S.C. § 12132), and that protection extends to voting. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) ("Voting is a quintessential public activity[,]" and "[e]nsuring that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others helps ensure that those individuals are never relegated to a position of political powerlessness.") (citations omitted). Under the ADA, discrimination includes having "methods of administration" that have the "effect of defeating or substantially impairing accomplishment of the

objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(ii). "In other words, a public entity cannot actively undercut the ability of a public program to benefit those with disabilities." *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 752 (N.D. Tex. 2014) (denying motion to dismiss plaintiff's ADA claim). Here, as set out above, the October 1 Order actively undercuts the participation of voters with disabilities by forcing them to risk unnecessary exposure to a deadly virus.

Likewise, the ADA also mandates that public entities make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability". 28 C.F.R. § 35.130(b)(7)(i); *Van Velzor*, 43 F. Supp. 3d at 760 (explaining that "a few reasonable accommodations" were needed "so that persons with disabilities receive meaningful access to [a public] benefit"); *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) (en banc) ("As the Supreme Court stated in *Tennessee v. Lane,* Title II imposes an 'obligation to accommodate,' or a 'reasonable modification requirement.'"); *Patterson v. Kerr County*, No. SA-05-CA-0626-RF, 2007 WL 2086671, at *7 (W.D. Tex. July 18, 2007) ("Because the regulation requires modifications that are 'necessary to avoid discrimination on the basis of disability,' liability does not depend on evidence of purposeful discrimination"). Providing additional locations for ballot drop-off boxes is a reasonable modification that is necessary to provide people with disabilities an equal opportunity to cast their ballots. Further, because additional ballot drop-off locations had already been provided by the counties, there is no "fundamental alteration" defense available to the state of Texas.

## CONCLUSION

For the foregoing reasons, *Amici* support Plaintiffs' motion for a temporary restraining order or preliminary injunction, and respectfully urge the Court to grant the requested relief.

Dated: October 8, 2020

/s/ *Mimi Marziani*
Mimi Marziani, Texas Bar No. 24091906
Hani Mirza, Texas Bar No. 24083512
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
hani@texascivilrightsproject.org

/s/ *Lia S. Davis*
Lia S. Davis, Texas Bar No. 24071411
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
ldavis@drtx.org

Respectfully submitted,

/s/ *Nimish Desai*
Nimish Desai, Texas Bar No. 24105238
Anne B. Shaver, California Bar No. 255928
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ndesai@lchb.com
ashaver@lchb.com

/s/ *Edgar Saldivar*
Andre Segura, Texas Bar No. 24107112
Edgar Saldivar, Texas Bar No. 24038188
Anjali Salvador, Texas Bar No. 24110324
David Donatti, Texas Bar No. 24097612
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
esaldivar@aclutx.org
asegura@aclutx.org
asalvador@aclutx.org
ddonatti@aclutx.org

Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on October 7, 2020, the foregoing was served on all parties of record

registered for CM/ECF notifications and is also being provided by e-mail to the following

counsel for Defendants.

Defendants Abbott and Hughes: Patrick Sweeten (patrick.sweeten@oag.texas.gov)
Defendant DeBeauvoir: Sherine Thomas (sherine.thomas@traviscountytx.gov)
Defendant Hollins: Susan Hays (hayslaw@me.com)
Defendant Oldham: Justin Pfeiffer (justin.pfeiffer@fortbendcountytx.gov)


*/s/ Edgar Saldivar*
Edgar Saldivar